UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                        :
JILL HUMPHRIES,                                         :
                                    Plaintiff,          :
                                                        :          13 Civ. 2641 (PAE)
                    -v-                                  :
                                                        :          OPINION & ORDER
CITY UNIVERSITY OF NEW YORK et al.,                     :
                                                        :
                                    Defendants.         :
                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Dr. Jill Humphries ("Humphries") brings this action against the City University

of New York ("CUNY"), her former employer, and several named CUNY employees

(collectively, "defendants").  Humphries alleges race discrimination, gender discrimination, and

hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et. seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290

*et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-

101 *et seq.* ("NYCHRL").  Humphries also brings a claim for retaliation under the NYSHRL.

        Defendants now move to dismiss all but the NYSHRL retaliation claim under Federal

Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court:  (1) dismisses

Humphries' discrimination and hostile work environment claims under Title VII, the NYSHRL,

and the NYCHRL; and (2) declines to exercise supplemental jurisdiction over Humphries'

NYSHRL retaliation claim.

## I.      Background

### A.      Facts[1]

Humphries, an African-American woman, has worked in academia for the past 20 years "as a Researcher, Lecturer, Instructor or Professor."  EEOC Charge ¶ 2; Am. Compl. ¶ 5.  She holds a Ph.D. in Public Administration, a masters degree in Public Administration, a masters degree in Public Health, and a Bachelor of Arts degree in Anthropology.  EEOC Charge ¶ 4.  In fall 2006, Humphries began to work for CUNY[2] as an adjunct assistant professor in the Urban Studies Department at Queens College.  *Id.* ¶ 9.  In spring 2008, Humphries was hired "as an adjunct assistant faculty member" for CUNY's Joseph S. Murphy Institute for Worker Education and Labor Studies ("JSMI").  *Id.* ¶ 12.

---

[1] For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Humphries attached four exhibits to her Amended Complaint ("Am. Compl.") (Dkt. 7).  The most significant is Humphries' Charge of Discrimination to the EEOC ("EEOC Charge").  Humphries incorporated the EEOC Charge into her Amended Complaint.  *See* Am. Compl. ¶ 15 ("Plaintiff Dr. Jill Humphries hereby incorporates her EEOC Charge of Discrimination, annexed as Exhibit B, and adds the following:").  The Court's account of the facts is drawn exclusively from the Amended Complaint and the EEOC Charge.  *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citing *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

Humphries also submitted two affidavits along with her opposition to defendants' motion to dismiss:  the Affidavit of Dr. Jill Humphries (Dkt. 12), which attaches four new exhibits, and the Affidavit of Sherilyn Dandridge (Dkt. 13), which attaches several e-mails exchanged between Humphries and the individual defendants.  Because these documents are outside the Amended Complaint, the Court has not considered them on this motion to dismiss.  *See Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (in deciding whether to dismiss a complaint under Rule 12(b)(6), a court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference").  In any case, these outside materials are not "integral" to the Amended Complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

[2] CUNY is a public university with 11 senior colleges, six community colleges, a law school, a school of professional studies, a graduate center, and a school of journalism.  Am. Compl. ¶ 6.

In May 2010, Humphries accepted an administrative position at the JSMI. Her job title was "Urban Studies Academic Program Manager/Higher Education Associate." Am. Compl. ¶ 5; EEOC Charge ¶ 13. The posted salary range for a CUNY Academic Program Manager was between $55,602 and $74,133. EEOC Charge ¶ 20 n.1. Humphries was initially offered a salary of $62,665, which she declined. *Id.* ¶¶ 19–20. Humphries then accepted the position at a salary of $64,956. *Id.* ¶ 20. Later, Humphries learned that Pamela Whitfield, a Caucasian female who, Humphries alleges, "performed similar job functions" and "had less academic experience and fewer academic credentials," was paid a salary of $79,242. *Id.* ¶¶ 18, 21–22; Am. Compl. ¶ 19.

On August 2, 2010, Humphries started working in her new role. EEOC Charge ¶ 25. Humphries alleges that during her employment, she experienced numerous adverse actions attributable to her race and gender, resulting in a "hostile, discriminatory, and retaliatory work environment." Am. Compl. ¶¶ 18, 30. In particular, she alleges that:

    (1) Katherine Krupat ("Krupat"), the Associate Director of Worker Education at the JSMI, subjected Humphries to "pejorative words" whenever she submitted completed work assignments. Am. Compl. ¶ 18(A).

    (2) Krupat changed Humphries' job description on July 19, 2010 (before Humphries started) and on September 21, 2010, "for no other reason other than to subject Plaintiff to a hostile working environment where Plaintiff could not possibly succeed as her job responsibilities and performance goals changed, arbitrarily and materially, day-to-day." *Id.*

    (3) Laurence Jackson ("Jackson"), the JSMI Associate Director for Administration and Personnel, "failed to timely provide [her] an office, keys, and access card," *id.* ¶ 23, denied her request to purchase "statistical software for the Murphy Institute," EEOC Charge ¶¶ 33–43, and denied her request for an "ergonomic chair," *id.* ¶ 44; Am. Compl. ¶ 23.

    (4) Humphries spoke to Jackson about these issues, but "found Jackson's communication harsh and demeaning for no apparent reason other than her sex and skin color." Am. Compl. ¶ 24.

    (5) Humphries had difficulty obtaining an ergonomic chair. EEOC Charge ¶ 61; Am. Compl. ¶ 29. On September 24, 2010, Humphries sent Jackson and Yosette Jones-

Johnson ("Jones-Johnson")—the Assistant Vice President for Faculty and Staff Relations at CUNY's Graduate Center—a letter from her physician "regarding her medical condition and her need for an ergonomic chair." Am. Compl. ¶¶ 10, 27. Jones-Johnson forwarded Humphries' request to Ella Kiselyuk ("Kiselyuk"), the Director for Human Resources for CUNY's Graduate Center. *Id.* ¶ 28. On September 27, 2010, Humphries and Kiselyuk met to discuss the request. EEOC Charge ¶ 54. Kiselyuk requested permission to speak to Humphries' doctor, which Humphries denied. *Id.* ¶¶ 56–57. On October 5, 2010, Humphries asked Kiselyuk to put her medical request in writing for review before forwarding it to Humphries' physician. *Id.* ¶¶ 58–60. Humphries never received an ergonomic chair.

(6) Krupat, Jackson, and other JSMI employees "inappropriately labeled [Humphries] as an 'Angry Black Woman'" by "categorizing her appropriate and effective assertiveness with pejorative words likened to the Angry Black Women Syndrome: 'aggressive', 'agitated', 'angry', 'belligerent', 'disruptive', 'hands on hip', 'hostile', 'threatening', and 'Vituperative', among others." Am. Compl. ¶¶ 26, 26(A).[3]

Humphries also alleges that she complained to her supervisors about Jackson's denial of her software request, but that they "sid[ed] with" defendant Jackson. *Id.* ¶ 25. On September 20, 2010, Humphries met with Edith Rivera ("Rivera"), the Chief Diversity Officer for CUNY's Affirmative Action Office ("AAO"). *Id.* ¶¶ 36–38. Also present was Kristin Maynard, a representative of the School of Professional Studies, CUNY Graduate Center. EEOC Charge ¶ 85. At the meeting, Humphries felt "Rivera was dismissive of her discrimination claims suffered at the hands of all Defendants." Am. Compl. ¶ 38. Humphries alleges that Rivera "tried to bully and discourage [her] from pursuing a formal complaint against Defendant CUNY and its agents." *Id.* Humphries further alleges that Rivera "failed to follow written CUNY policy and procedure in investigating [Humphries'] allegation of race and gender discrimination." *Id.* ¶ 38(A).[4]

---

[3] For several of Humphries' allegations, she pleads that "[u]pon information and belief, [her] non-Black and/or male colleagues were not subject to" the same treatment. *See* Am. Compl. ¶¶ 18, 21, 23, 26, 26(A), 28, 29, 41.

[4] As alleged, Rivera apparently did conduct an internal investigation of some kind into Humphries' discrimination complaint. EEOC Charge ¶ 91 ("On October 18, 2010, I was informed that my discrimination complaint lacked merit.").

After Humphries' September 20, 2010 meeting with CUNY's AAO, Humphries "insisted on union representation during all management-initiated meetings" regarding her performance. *Id.* ¶ 40(C).  Krupat scheduled a meeting with Humphries on October 4, 2010, but Humphries did not attend.  EEOC Charge ¶ 96.  As a result, Krupat told Humphries to "put all work in progress on hold," and to "not go further with any project or any meetings with Urban Studies staff."  Am. Compl. ¶ 40(A).  Humphries characterizes this as a "*de facto*" suspension, which was "lifted," 11 days later, on October 15, 2010.  *Id.*; EEOC Charge ¶ 110.  On October 12, 2010, Krupat directed Humphries to attend the Urban Studies program team meeting scheduled for October 13, 2010.  EEOC Charge ¶ 108.  Humphries attended the meeting, but was, apparently, "belligerent."  *Id.* ¶ 111.  On October 15, 2010, Krupat placed in Humphries' personnel file "an instructional memo labeling [her] as being belligerent during" that meeting. *Id.*

Between October 21, 2010 and January 3, 2011, Humphries took a 10-week leave of absence to care for her ailing father.  *Id.* ¶¶ 112–113.  Upon her return, Humphries "received a notice of Intent for Immediate Discharge from the Instructional Staff" of the CUNY Graduate Center.  *Id.* ¶ 114.  Four days later, on January 7, 2011, Humphries was fired.  *Id.* ¶ 115; Am. Compl. ¶ 40(F).

Humphries filed a grievance against CUNY under the Collective Bargaining Agreement, *see* EEOC Charge ¶ 121, which was submitted for arbitration on January 20, 2012, *see Humphries v. City University of New York*, Index No. 651699/2013 (Sup. Ct. N.Y. Co., Singh, J.) (June 26, 2013).[5]  The purpose of the Arbitration was to determine whether CUNY had just

---

[5] The Court takes judicial notice of the docket in the above-captioned case, *Humphries v. City of New York*, in which Humphries challenged the arbitrators' denial of her collective bargaining grievance. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take

cause under the collective bargaining agreement and CUNY by-laws to terminate Humphries. *Id.* The Arbitrator ruled in favor of CUNY. Humphries' petition in New York State Court to vacate this ruling was denied. *Id.*

### B. Procedural History

On April 27, 2011, Humphries filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she had suffered discrimination and retaliation on the basis of race, sex, and disability. *See* EEOC Charge. On January 22, 2013, the EEOC issued Humphries a "right to sue letter." *See* Am. Comp. Ex. A.

On April 22, 2013, Humphries filed her initial Complaint. Dkt. 1. On June 28, 2013, defendants submitted a motion to dismiss, Dkt. 4, and a supporting memorandum of law, Dkt. 5 ("Def. Br."). On July 19, 2013, Humphries filed an Amended Complaint. Dkt. 7. On July 31, 2013, defendants submitted a letter stating that they would "stand on their original papers." Dkt. 8. On August 26, 2013, Humphries submitted a memorandum of law in opposition to the motion to dismiss, Dkt. 11 ("Pl. Br."), the Affidavit of Dr. Jill Humphries, Dkt. 12, and the Affidavit of Sherilyn Dandridge, Dkt. 13. On September 9, 2013, defendants filed their reply. Dkt. 14 ("Def. Rep. Br.").

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

judicial notice of documents filed in other courts."). The Court does not consider the procedural history or any filings in that court case for the truth of the matters asserted in that litigation, but simply to establish the fact of and background to that litigation, which was referenced in Humphries' EEOC Charge.

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555.  The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).  The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Recently, the Second Circuit stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order).  At a minimum, however, "employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a *prima facie* case is not required." *Id.*  Although "a complaint need not establish a *prima facie* case of employment discrimination[, it] must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *4 (S.D.N.Y. Apr. 30, 2013) (quoting *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)).  "In the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Williams v. Addie Mae*

7

*Collins Cmty. Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27,

2012) (citing *Patane v. Clark*, 508 F.3d 106, 111–13 (2d Cir. 2007)).

## III.     Discussion

### A.     Defining the Title VII Claims in the Amended Complaint

At the outset, it is necessary to define Humphries' claims under Title VII, *i.e.*, her federal

claims.  These claims are set out in her first cause of action, which states that defendants' acts

"were designed, intended and used to discriminate against Plaintiff, and create a hostile working

environment, due to her sex/gender and race in violation of Title VII, 42 U.S.C. § 2000e."  Am.

Compl. ¶¶ 43.  On the face of her pleading, the Court construes Humphries' Title VII claims to

be for: (1) race and gender discrimination; and (2) a hostile work environment.  She does not

plead a Title VII claim for retaliation.[6]

---

[6] Humphries, who is represented by counsel, pleads a retaliation claim only under the New York State Human Rights Law.  *See* Am. Compl. ¶ 47 ("The aforementioned acts toward the Plaintiff by Defendants . . . constitute *retaliation* in violation of NY Exec. Law § 296(7).") (emphasis added).  Humphries' Title VII Cause of Action does not mention retaliation.  *See* Am. Compl. ¶¶ 43 (defendants' acts "were designed, intended and used to discriminate against Plaintiff, and create a hostile working environment, due to her sex/gender and race in violation of Title VII, 42 U.S.C. § 2000e.").  Humphries' brief in opposition does briefly refer to federal law governing retaliation claims brought under Title VII, Def. Br. at 9–11, but a reference in an opposition brief is no cure for failing to plead such a federal claim in her Amended Complaint.
*See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 393 (S.D.N.Y. 2007) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.") (citation omitted); *Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).  Defendants state, in their reply brief, that they "did not move against the retaliation claim, recognizing that, at the pleading stage, temporal proximity between a complaint and an adverse employment action, like termination, is enough."  Def. Rep. Br. at 4 n.3 (citing *Morris v. Landau*, 196 F.3d 102, 113 (2d Cir. 1999)).  The Court construes this statement to explain the decision not to move to dismiss Humphries' retaliation claim, brought under state law, because that is the only retaliation claim pled in the Amended Complaint, not to acknowledge that the Amended Complaint contains a federal-law retaliation claim.

The Amended Complaint is less than pellucid as to whether it is intended to plead a claim for sexual harassment.  Humphries' first cause of action, which alleges a "hostile working environment, due to her sex/gender and race," appears to so plead, and the Amended Complaint recites several allegations consistent with an intention to bring such a claim.  Most notably, the Amended Complaint alleges that Krupat "stare[d] at [Humphries] in a sexually suggestive manner," "deliberately leered at [her] body," and "stare[d] at her breast." Am. Compl. ¶ 31–33. But the Amended Complaint's summary paragraph identifying Humphries' causes of action does not mention sexual harassment, *see, e.g.*, *id.* at ¶ 1, and the term "sexual harassment" does not appear anywhere in the Amended Complaint.  Furthermore, although defendants devote a large section of their memorandum of law arguing for dismissal of a sexual harassment claim, *see* Def. Br. at 13–19, Humphries' opposition papers do not mention, let alone defend, such a claim.  *See also* Def. Rep. Br. at 1 (noting "plaintiff's apparent abandonment of the sexual harassment claim against either CUNY or Katherine Krupat").  Nonetheless, despite Humphries' casual pleading on this point, the Court will construe the Amended Complaint to have alleged a hostile work environment on account of sex, and will consider the above allegations regarding Krupat as part of that claim.

Finally, Humphries has withdrawn her Title VII claims against the individual defendants. Pl. Br. at 12 ("Plaintiff withdraws the Title VII Claims against defendants Mantsios, Krupat, Jackson, Jones-Johnson, Rivera, and Kiselyuk.").  In so doing, Humphries appears to have acknowledged legal reality:  In the Second Circuit, individuals cannot be held personally liable under Title VII.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (an individual defendant "may not be held personally liable under Title VII"), *abrogated on other grounds by Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998) and *Burlington Indus., Inc. v.*

*Ellerth*, 524 U.S. 742, 764–65 (1998).  Personal liability is unavailable regardless of whether a supervisor has been shown to have committed discrimination.  *See Finn v. N.Y. State Off. of Mental Health-Rockland Psychiatric Ctr.*, No. 08 Civ. 5142 (VB), 2011 WL 4639827, at *10 (S.D.N.Y. Oct. 6, 2011) *aff'd*, 489 F. App'x 513 (2d Cir. 2012) (citation omitted).

Accordingly, Humphries' Title VII claims apply against only defendant CUNY. Defendants have moved to dismiss both Title VII claims: (1) race and gender discrimination; and (2) hostile work environment.  The Court considers each in turn.

**B.     The Amended Complaint Fails to State a Claim Under Title VII For Race or Gender Discrimination**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin."  42 U.S.C. §§ 2000e-2(a)(1) (emphasis added).  To establish a *prima facie* case of discrimination under Title VII, a plaintiff must demonstrate that:  (1) she was within the protected class, (2) she was qualified for the position, (3) she experienced an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (citing *Gorzynski v. JetBlue Airways, Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). The "*sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of*" the employee's protected characteristic.  *Patane*, 508 F.3d at 112 (citation omitted) (emphasis in the original); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs *because of* an employee's sex, or other protected characteristic.") (emphasis added).

Although Humphries is not required to establish a *prima facie* case of employment discrimination at the pleading stage, the elements of a *prima facie* case "provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible." *Sommersett*, 2011 WL 2565301. Accordingly, a claim for discrimination under Title VII is properly dismissed where the plaintiff fails "to plead any facts that would create an inference that any adverse action taken by any defendant was based upon" the protected characteristic. *Patane*, 508 F.3d at 112 (citation omitted).

Here, defendants do not dispute that Humphries has adequately alleged the first two elements of a *prima facie* case. As an African-American woman, Humphries is a member of a protected class both as to her race and her gender. And she alleges that she was qualified for her position. Thus, to make out a plausible case under Title VII, Humphries must allege that she was subject to an adverse employment action, and that the adverse employment action took place under circumstances giving rise to an inference of discrimination based upon her race or gender.

Reading Humphries' discursive pleadings liberally, the Court identifies just two potentially plausible adverse employment actions: Humphries (1) received a lower salary than Pamela Whitfield, a female Caucasian employee; and (2) was terminated. Defendants' motion to dismiss therefore argues that Humphries has not alleged facts sufficient to give rise to a plausible inference that either of these two actions occurred *because of* her race or gender.

### 1. Disparate Pay

The first adverse employment action is that Humphries was paid less than a Caucasian female co-worker, Pamela Whitfield ("Whitfield"). "Subjecting an employee to unequal pay can, of course, constitute a materially adverse employment action." *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) (citing *Borrero v. Am. Express Bank*

*Ltd.*, 533 F. Supp. 2d 429, 438 (S.D.N.Y. 2008)).  Here, Humphries was paid a salary of $64,956, while Pamela Whitfield, a Caucasian female, was paid $79,242.  Am. Compl. ¶ 19; EEOC Charge ¶¶ 18–20.

However, to establish an inference of discrimination based on a showing of disparate treatment, Humphries must plead that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted).  What constitutes "all material respects" varies from case to case, but "must be judged based on [] whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards."  *Id.* at 40.  The standard requires "a reasonably close resemblance of facts and circumstances."  *Id.*; *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Here, Humphries has failed to plead facts to establish that she and Whitfield were similarly situated with respect to relevant experience and/or length of employment.  Humphries does not plead how long Whitfield had been working for CUNY or, for that matter, anything about Whitfield's relevant administrative experience.  Nor does she plead facts about Whitfield's job responsibilities or her annual reviews.  Humphries simply pleads that Whitfield:  (1) was an Academic Program manager; (2) "performed similar job functions;" and (3) "had less academic experience and fewer academic credentials."  EEOC Charge ¶¶ 18–22; Am. Compl. ¶ 19.  These conclusory statements about a co-workers' qualifications are insufficient to raise an inference of discrimination.  *See Gupta v. New York City Sch. Const. Auth.*, 305 F. App'x 687, 689 (2d Cir.

2008) (upholding district court's decision to treat as "mere speculation" plaintiff's allegation that "employees who were promoted or retained were less academically qualified with less professional experience"); *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 405 (S.D.N.Y. 2010) (because plaintiff did not "present any concrete facts regarding the training, qualifications, or abilities of the retained employees," speculation about former colleagues' qualifications is "insufficient to raise an inference of discrimination").  On this basis alone, Humphries has failed to plead plausibly that CUNY discriminated against her on the basis of race by paying her less than Whitfield.

It is also significant that, as alleged, Humphries' salary fell squarely within the posted range of $55,602 to $74,133 for an Academic Program Manager.  EEOC Charge ¶ 20 n.1. Humphries was originally offered a salary of $62,665, which she declined.  *Id.* at ¶ 19.  She then accepted the offer of $64,956.  *Id.* at ¶ 20.  Accordingly, Humphries was hired to start at a salary almost exactly in the middle of the posted range for her position.  A bald allegation that one of Humphries' white colleagues—of unknown years of service, training, or experience—made 20% more than Humphries' starting salary is not enough, standing alone, to raise an inference of discrimination.  And the Amended Complaint does not plead any other facts (*e.g.*, statements from personnel responsible for the setting of the two women's salaries) that might give rise to an inference that the salary differential reflected the women's different races.

Because the Amended Complaint does not supply a plausible basis on which one could infer that a decision to pay Humphries less than Whitfield was based on gender or race discrimination, Humphries' Title VII claim for pay discrimination is dismissed.

### 2.    Termination of Employment

Humphries' termination, on January 7, 2011, was the quintessential materially adverse employment action.  *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998).  The question is whether Humphries has alleged facts that could give rise to a plausible inference that her termination occurred *because of* her race or gender.  Humphries makes two broad allegations that, if backed up by adequately pled facts, could supply a plausible basis for such an inference:  (1) CUNY employees treated her worse than similarly situated Caucasians and men throughout her short period of employment; and (2) CUNY employees used stereotypical terminology to refer to her, so as to reveal their discriminatory animus.

### a.   Allegations of Disparate Treatment

The Amended Complaint repeatedly alleges that Humphries was treated worse than similarly situated men and Caucasians.  Some eight times it makes the generic statement:  "Upon information and belief, Dr. Jill Humphries' non-Black and/or male colleagues were not subject to" the same treatment.  *See* Am. Compl. ¶¶ 18, 21, 23, 26, 26(A), 28, 29, 41.  But beyond the allegation of disparate pay—discussed *supra*—the Amended Complaint does not make any concrete factual allegations on which the conclusion could plausibly be drawn that she was treated differently from similarly situated white or male colleagues.  The treatment of which she complains consist of:  (1) two changes to her job description (one after she started); (2) the denial of her request for statistical software; (3) delayed provision of her keys and office; and (4) denial of her request for an ergonomic chair.  These modest slights and inconveniences, even viewed cumulatively, are not indicative, on their face, of racism or sexism.  Instead, they reflect "workplace difficulties entirely consistent with non-race, non-gender-based personality

disputes—disputes that are plainly not actionable under statutes intended to root out discrimination on the bases of certain statutorily defined protected characteristics." *Williams v. Time Warner Inc.*, No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011). Difficulties in obtaining necessary work supplies or keys are routine annoyances familiar to anyone who has ever worked in an office.

In any event, the Amended Complaint does not, except in conclusory fashion, link these alleged slights or indignities to Humphries' race or gender. It states that Humphries "found Jackson's communication harsh and demeaning for no apparent reason other than her sex and skin color." Am. Compl. ¶ 24. But this is conclusory. Humphries does not allege that Jackson actually said anything demeaning (such as using racist language)—but merely that, without explanation, Humphries *perceived* his communication as harsh and demeaning and *perceived* that he so acted based on her race and gender. Humphries alleges no facts to support her subjective perceptions. In effect, the Amended Complaint tars Jackson as a racist and sexist without alleging any factual basis for these labels. Such purely conclusory allegations of discrimination, absent any concrete particulars would fail to establish a *prima facie* case.

The same shortcoming applies to the Amended Complaint's repeated statement that "[u]pon information and belief" her non-Black and male colleagues were not subjected to the same administrative inconveniences. *See* p. 14, *supra*. At the pleading stage, it is not enough to assert mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S at 555. Yet the Amended Complaint does not back up this claim with any concrete factual allegations which might support such a belief. It does not, for example, allege that Humphries' non-Black and male colleagues received their keys or offices faster, or that their offices were equipped with more advanced software or ergonomic chairs.

There are literally no facts alleged in the Amended Complaint that could plausibly support an inference that CUNY treated Humphries any differently from her white or male colleagues.

### b.   Allegations of Stereotypical Language

The other possible basis for inferring discrimination is the Amended Complaint's claim that CUNY employees referred to Humphries using stereotypical language.  Discriminatory or stereotypical remarks are often admissible, because they may tend to show discriminatory animus.  Whether remarks by defendants or defendants' employees support an inference of discrimination depends, however, on the context in which they were made and whether, fairly considered, they themselves reveal discrimination or "tend[] to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class."  *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 116 (2d Cir. 2007).

Here, the Amended Complaint alleges that Humphries' supervisors and co-workers referred to her using "pejorative words likened to the Angry Black Women Syndrome: 'aggressive', 'agitated', 'angry', 'belligerent', 'disruptive', 'hands on hip', 'hostile', 'threatening', and 'Vituperative', among others."  Am. Compl. ¶ 26(A).  It does not, however, allege that anyone at CUNY ever actually referred to Humphries as an "angry black woman" or otherwise ever used language that explicitly referenced Humphries' race or skin color.  Instead, the Amended Complaint merely alleges that, based on the above adjectives, Humphries perceived herself to have been stereotyped on account of race.  But "feelings and perceptions of being discriminated against are not evidence of discrimination."  *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 456 (2d Cir. 1999)); *accord Fisher v. Vassar Coll.,* 70 F.3d 1420, 1439 (2d Cir.1995) (Plaintiff's "sense of being discriminated against is not evidence.").  Although use of the above adjectives to describe an employee could, in combination with other concrete factual allegations,

support a claim of racial and/or gender discrimination, here there are no such allegations. Without more, Humphries' subjective interpretation of her co-workers' use of these critical but facially non-discriminatory terms does not, itself, reveal discriminatory animus.

The Amended Complaint thus fails to plead a plausible case of disparate treatment or discriminatory animus on the part of CUNY. Because Humphries' termination, as pled, did not occur under circumstances giving rise to an inference of race or gender discrimination, the Amended Complaint fails to state a plausible claim for discrimination under Title VII.[7]

Defendants' motion to dismiss Humphries' Title VII discrimination claim is, therefore, granted.

### C.     The Amended Complaint Fails to State a Claim Under Title VII For Hostile Work Environment

The Court next considers the Amended Complaint's claim that the actions of CUNY's employees, as discussed above, created a hostile work environment on account of her gender or race.

Title VII "prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013). The Second Circuit has described the elements of a hostile work environment as follows:

> To state a claim for a hostile work environment . . . , a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe

---

[7] The Amended Complaint also alleges that Humphries was temporarily suspended. Although a suspension is an adverse action, the Amended Complaint pleads no facts to support an inference that this suspension came about because of her race or gender. Instead, it simply pleads that Humphries was *de facto* suspended (with pay) on October 4, 2010, *see* Am. Compl. ¶ 40(A), and that this suspension "was lifted" on October 15, 2010, *see* EEOC Charge ¶ 110. And Humphries has acknowledged that she was suspended from her job duties for a different reason than her race or gender—"for refusing to meet with [Krupat] and Dr. Mantsios without [her] union representative." EEOC Charge ¶ 96. There is, therefore, no factual pleading on which the inference could be plausibly be drawn that Humphries' 11-day suspension derived from race or gender discrimination.

or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected class]."

*Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)); *see also Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 260 (E.D.N.Y. 2012).  Importantly, Title VII "does not set forth 'a general civility code for the American workplace.'"  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasizing that Title VII does not prohibit all workplace harassment, but only harassment that reflects or derives from statutorily proscribed forms of discrimination).

"[A] work environment's hostility should be assessed based on the totality of the circumstances."  *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Factors that may be considered include:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citation omitted).  Thus, "whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," and, accordingly, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss such a claim.  *Id.* at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

The allegations in the Amended Complaint fail to clear even a low bar.  Putting aside the conclusory claim of a "hostile working environment where [she] could not possibly succeed," *see* Am. Compl. ¶ 18, Humphries' allegations are that, for the fewer than three months during which she worked for CUNY at the JSMI, her requests for software and an ergonomic chair were

denied; her job description changed once before she started and again a couple of months later; she had to wait to get her office and her keys; and she was characterized by co-workers as angry and hostile.  She also alleges that her supervisor stared and leered at her in "a sexually suggestive manner," and made some comments about her "attire."  Am. Compl. ¶ 31–34.  These vague and conclusory allegations do not adequately plead that Krupat ever acted in any "sexually suggestive" or inappropriate manner.  In any case, assuming the truth of all of Humphries' allegations, and viewing them in their totality, they fall well short of the sort of conduct that courts have found "sufficiently pervasive to alter the conditions of the victim's employment." *See Alfano v. Costello*, 294 F.3d 365, 379–80 (2d Cir. 2002) (collecting cases in which courts have and have not found sufficient evidence of a hostile work environment); *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388 (PAE), 2012 WL 5451189 (S.D.N.Y. Nov. 8, 2012) *aff'd*, 2013 WL 5584317 (2d Cir. Oct. 11, 2013) ("The episodes Mendez–Nouel complains of are simply too episodic, insufficiently serious, and, most important, insufficiently tied to his gender or sexual orientation, to have materially altered the conditions of Mendez–Nouel's employment on the basis of any protected classification.")

The conduct concretely alleged in the Amended Complaint, viewed in totality, was not sufficiently pervasive in its hostility to alter the conditions of Humphries' employment at CUNY.  Nor is it plausible that this conduct constituted harassment on the basis of Humphries' gender or race.  Defendants' motion to dismiss Humphries' Title VII hostile work environment claim is, therefore, granted.

### D.    Humphries Fails to State a Claim of Discrimination or Hostile Work Environment Under the NYSHRL or NYCHRL

The Amended Complaint also pleads claims under the state and local Human Rights Laws.  In its second cause of action, the Amended Complaint pleads, under the NYSHRL, claims

of race and gender discrimination and retaliation.  Am. Compl. ¶¶ 44–47 (citing NYSHRL §§ 296(6) and 296(7)).  In its third cause of action, it pleads, under the NYCHRL, claims of race and gender discrimination.  Am. Compl. ¶¶ 48–49 (citing NYCHRL § 8-107).  The NYSHRL and NYCHRL claims are brought against CUNY and six named individual defendants.

At the outset, the Court dismisses the claims under the NYSHRL and NYCHRL against CUNY.  As Humphries acknowledges, CUNY, as a state instrumentality, is not subject to suit under city law.  *See* Pl. Br. at 12; *see also Jattan v. Queens College*, 883 N.Y.S.2d 110, 112 (2d Dep't 2009) ("As an instrumentality of the State, Queens College is not subject to the provisions of the New York City Human Rights Law [NYCHRL].").  Humphries argues, however, that CUNY is subject to suit under the NYSHRL.  Pl. Br. at 12.  But as a matter of law, under the Eleventh Amendment, CUNY is not subject to suit in federal court for alleged violations of state law.  *See Clissuras v. CUNY*, 359 F.3d 79 (2d Cir. 2004) (affirming dismissal of claims against CUNY on Eleventh Amendment sovereign immunity grounds); *id.* at 81 ("It is well settled that the ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.") (citation omitted); *Jungels v. State University of New York*, 922 F. Supp. 779 (W.D.N.Y. 1996), *aff'd sub nom. Jungels v. Jones*, 112 F.3d 504 (2d Cir. 1997) (Eleventh Amendment forbids federal court from considering state human rights law claims against state agencies).  Accordingly, all NYSHRL and NYCHRL claims against CUNY are dismissed.[8]

---

[8] Humphries' NYSHRL claim against CUNY for retaliation is dismissed without prejudice to Humphries' right to bring such a claim in state court.  However, because Humphries' NYSHRL claims against CUNY for race and gender discrimination and hostile work environment are substantively deficient, *see infra* at 21, they are dismissed with prejudice.

As to the NYSHRL and NYCHRL claims against the individual defendants, these defendants have moved to dismiss the race and gender discrimination claims under the NYSHRL and NYCHRL, but not the retaliation claim, which is brought only under the NYSHRL.

The NYSHRL and NYCHRL each make it unlawful "[f]or an employer . . . because of an individual's . . . race [or] sex . . . to discharge from employment . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a); N.Y. City Admin. Code § 8–107(1)(a).

"[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 1744 (2012) (citing *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997)).  Accordingly, Humphries' claims under the NYSHRL for race or gender discrimination must be, and are, dismissed.

As to the NYCHRL, race and gender discrimination claims under the New York City law are subject to a more liberal judicial construction than those brought under federal or state law. The NYCHRL "requires that courts give the statute an independent and more liberal construction than its federal and state counterparts."  *Sotomayor*, 862 F. Supp. 2d at 257 (citation omitted); *see also id.* ("The provisions of this [] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed."); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts."); *Albunio v. City of N.Y.*, 16 N.Y.3d 472, 478–79 (2011) (NYCHRL must be construed "broadly in favor of discrimination

plaintiffs, to the extent that such a construction is reasonably possible"); *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 30 (1st Dep't 2009) ("[C]ourts [must] be sensitive to the distinctive language, purposes, and method of analysis required by the [NYCHRL], requiring an analysis more stringent than that called for under either Title VII or the [NYSHRL].").

Notwithstanding this more liberal standard of review, "[o]ur consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000).  Under that framework, Humphries would still have to demonstrate that:  (1) membership in a protected class, (2) qualifications for the position, (3) an adverse employment action, and (4) circumstances giving rise to an inference of discrimination.  *Bucalo*, 691 F.3d at 129.  For the reasons stated above, the Amended Complaint fails to plead *any facts* that could give rise to an inference that Humphries' disparate pay or her termination of employment was motivated by race or gender discrimination; it thus fails to state a claim even under the more liberal standards of the NYCHRL.  Accordingly, Humphries' NYCHRL claims of discrimination are dismissed.

### E.   The Court Declines to Exercise Supplemental Jurisdiction Over the Amended Complaint's NYSHRL Claim for Retaliation Against the Individual Defendants

Having dismissed all Title VII claims brought in the Amended Complaint, the Court must next determine whether to exercise supplemental jurisdiction over Humphries' only remaining claim—retaliation under the NYSHRL against the individual defendants.  Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a

district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *In re Merrill Lynch*, 154 F.3d at 61 (citing *Cohill*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of the Court exercising supplemental jurisdiction over Humphries' NYSHRL retaliation claim against the individual defendants.  The Court has done little more than resolve a motion to dismiss, which did not address the retaliation claim.  The Court has not yet invested the resources necessary to make itself familiar with this claim, let alone to resolve it.  Nor do convenience, fairness, or comity counsel in favor of retaining jurisdiction.  The Court accordingly declines to exercise supplemental jurisdiction over this claim.  The Amended Complaint's NYSHRL retaliation claim against the individual defendants is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss, with prejudice, all claims in the Amended Complaint brought under Title VII, and all claims brought under the NYSHRL and the NYCHRL, except for the claim of retaliation under the NYSHRL.  The Court

23

also declines to exercise supplemental jurisdiction over that claim, and dismisses it without

prejudice to Humphries' right to bring such a claim in state court.

The Clerk of Court is directed to terminate the motion pending at docket number 4 and to

close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 26, 2013
New York, New York